

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-9-1998

# In Re: City of Phila

Precedential or Non-Precedential:

Docket 96-1978

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation
"In Re: City of Phila" (1998). *1998 Decisions.* Paper 222.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/222

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 9, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1978

IN RE: CITY OF PHILADELPHIA LITIGATION
(D.C. Civil No. 85-cv-02745)

RAMONA AFRICA

        Appellant

v.

CITY OF PHILADELPHIA; WILLIE GOODE; LEO A.
BROOKS; GREGORE SAMBOR; WILLIAM RICHMOND;
FRANK POWELL, LT.; WILLIAM KLEIN, OFFICER;
MICHAEL TURSI, OFFICER; ALBERT REVEL, SGT.;
EDWARD CONNOR, SGT.; MORRIS DEMSKO, CORPORAL;
RICHARD REED, STATE TROOPER, Individually and in
their present and/or former official capacities
(D. C. Civil No. 87-cv-02678)

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. Nos. 85-cv-02745 & 87-cv-02678)

Argued
January 27, 1998

Before: MANSMANN, COWEN and ALITO, Circuit Judges.

(Filed September 9, 1998)

       Andre L. Dennis, Esquire (ARGUED)
       Danielle Banks, Esquire
       Stradley, Ronon, Stevens & Young
       2600 One Commerce Square
       Philadelphia, PA 19103
        Counsel for Appellant

       Judith E. Harris, Esquire (ARGUED)
       Morgan, Lewis & Bockius
       2000 One Logan Square
       Philadelphia, PA 19103
        Counsel for Appellees:
        City of Philadelphia,
        Gregore J. Sambor and
        William C. Richmond

OPINION OF THE COURT

MANSMANN, Circuit Judge.

In a companion case decided today, we relate the salient facts surrounding the disastrous confrontation between the City of Philadelphia police and the members of MOVE. See In re City of Phila. Litig., ___ F.3d ___ (3d Cir. 1998). Although dozens of claims emerged from the ashes and rubble of 6221 Osage Avenue in West Philadelphia, the present appeal brings before us only the judgment entered against Ms. Ramona Africa and in favor of defendants William Richmond, the former City of Philadelphia Fire Commissioner, and Gregore Sambor, the former City of Police Commissioner, on Ms. Africa's state law battery claim.

The issue we are called upon to decide in this appeal is whether Ms. Africa has properly raised and preserved any right she may have had to a jury trial on the issue of willful misconduct in relation to her battery claim against Richmond and Sambor. In addition, we must determine whether the district court erred in determining that Ms. Africa failed to show willful misconduct by a preponderance of the evidence. Because we conclude that Ms. Africa has failed to properly raise and preserve any right to a jury trial

2

that she may have had on the willful misconduct issue and because we find that the district court did not err in ruling on willful misconduct, we will affirm the judgment entered in favor of Richmond and Sambor.

I.

We begin our review with an abbreviated recitation of the procedural history relevant to this appeal. On October 6, 1993, the magistrate judge assigned to this case recommended granting summary judgment to all individual defendants on the state law claims except Richmond and Sambor because each was immune from common law tort liability. In re City of Phila. Litig., 849 F. Supp. 331, 364 (E.D. Pa. 1994). He recommended denying summary judgment as to Richmond and Sambor because there was evidence that their decision not to extinguish the fire on the roof of the MOVE compound constituted "willful misconduct," conduct that would preclude them from obtaining official immunity from the state law claims under Pennsylvania law. See 42 Pa. Cons. Stat. Ann. S 8550 (West 1982). The district court adopted the magistrate judge's recommendation with respect to Richmond and Sambor and denied them summary judgment on the state law claims.

After various appeals, remands, and pre-trial decisions, Richmond and Sambor filed motions requesting that the district court reconsider its summary judgment order denying them judgment as a matter of law based on official immunity. The district court denied these motions in a bench opinion delivered on January 18, 1996. See In re City of Phila. Litig., 938 F. Supp. 1264 (E.D. Pa. 1996). The court found that there was evidence suggesting that Richmond and/or Sambor deliberately disregarded an order from General Brooks to put out the fire. Such obvious insubordinate conduct, according to the district court, could establish willful misconduct -- intentional conduct known to be wrong -- because a reasonable factfinder could infer from the decision to flout a direct order that they knew their conduct was "an excessive response to the law enforcement requirements" yet intentionally proceeded

3

with that course of conduct despite this knowledge. Id. at 1276-77.

In denying Richmond and Sambor's motions for reconsideration, the district court also determined that, under Pennsylvania law, the issue of willful misconduct must be decided by the court rather than by a jury. Id. at 1270, 1277-78. The court concluded that the reference to a judicial determination of willful misconduct in Pennsylvania's Political Subdivision Tort Claims Act (PSTCA) mandates that the court decide the issue. Id.; see also 42 Pa. Cons. Stat. Ann. S 8550 (West 1982).

A flurry of motions for reconsideration and motions in limine followed the court's decision denying reconsideration of its summary judgment determination. None of the initial motions for reconsideration, however, questioned the court's determination that the issue of willful misconduct was to be determined by the court.[1] In a motion in limine filed on March 19, 1996, Sambor first took issue with the court's decision that it would determine the issue of willful misconduct. Sambor argued that, under Pennsylvania law, the issue of willful misconduct should be decided by a jury. In response to this motion in limine, Ms. Africa advocated that the court deny Sambor's request for a jury determination on willful misconduct. In a pretrial conference on March 26, 1996, the court again made clear that, based upon its interpretation of the PSTCA, the court was required to determine the issue of willful misconduct. Ms. Africa made no objection to the court's determination at that time.

At a pretrial hearing on March 27, 1996, Sambor submitted a letter memorandum to the court taking issue with the timing of a bench determination on willful misconduct and arguing that any bench determination

_____

1. Sambor filed a motion for reconsideration on January 22, 1996 which made no reference to the court's determination that it would decide the issue of willful misconduct. Likewise, Ms. Africa's response to the defendants' motions filed on January 25, 1996 took no exception to this ruling. The parties did not include Richmond's January 23, 1996 motion for reconsideration in their appendices in this appeal; Ms. Africa has not contended, however, that Richmond's motion raised this issue.

4

must be made after the jury had considered the merits of the state law claims. The court accepted Sambor's submission and requested that the other parties submit their views on this issue. Richmond subsequentlyfiled a memorandum reiterating Sambor's position. Ms. Africa responded on April 11, 1996 in a "Response to Defendant's Motions . . . and Motion for Reconsideration of the January 18, 1996 Bench Ruling," raising several points relating to the burden of proof on willful misconduct. In one sentence, in the conclusion of her response, Ms. Africa requested that the issue of willful misconduct, if raised, be submitted to the jury. Ms. Africa cited no authority for this request. In a supplemental submission filed on April 15, 1996, Ms. Africa made no specific demand that the willful misconduct issue be determined by a jury.

At a pretrial conference on April 18, 1996, the court outlined the procedure it intended to follow with respect to the battery claim. The court explained that the jury would first decide the substantive state law claims. If the jury found against Richmond and/or Sambor, the court would then decide the issue of willful misconduct, conforming its findings, if necessary, to the jury's findings. No objections were made to this procedure at that time.

On June 24, 1996, the jury returned a verdict against Richmond and Sambor on the battery claim, thus necessitating a ruling on official immunity. In an opinion and order dated August 27, 1996, the district court held that because plaintiffs failed to carry their burden of establishing willful misconduct, Richmond and Sambor were entitled to official immunity on the battery claim. In re City of Phila. Litig., 938 F. Supp. 1278, 1290-93 (E.D. Pa. 1996). The court held that the claims against Richmond failed because the trial testimony dispelled any possibility that Richmond willfully disregarded Brooks' order.[2] Id. at

_____

2. The question of whether Richmond had received Brooks' order and subsequently disregarded it was disputed at the summary judgment stage due to Sambor's testimony before the MOVE Commission that Richmond was present when Brooks ordered Sambor to put out the fire. Sambor recanted this testimony at trial, acknowledging that his testimony before the MOVE Commission was erroneous. Richmond's testimony that he instructed his firefighters to extinguish the fire as soon as he received orders to do so was therefore undisputed at trial.

5

1290. As to Sambor, the district court weighed the evidence and concluded that plaintiffs did not establish by a preponderance of the evidence that Sambor committed willful misconduct. The district court specifically credited Sambor's testimony that he and Richmond agreed to let the fire neutralize the bunker before receiving any order from Brooks to extinguish the fire. Id. at 1292-93. The district court accordingly entered judgment in favor of Richmond and Sambor on the battery claim on August 28, 1996. Ms. Africa timely filed this appeal from that final judgment.

Ms. Africa asserts that the district court erred in failing to submit the issue of willful misconduct to a jury. In addition, she challenges the district court's legal and factual determinations in relation to its ruling on willful misconduct. Because we find that Ms. Africa failed to properly raise and preserve any right she may have had to a jury trial on the issue of willful misconduct and that the district court's legal and factual determinations on willful misconduct were not erroneous, we will affirm the district court's judgment in favor of Richmond and Sambor.

II.

The right to a jury trial in federal court, regardless of whether the claim arises under state law, presents a question of federal law. Simler v. Conner, 372 U.S. 221, 222 (1963) (per curiam); Cooper Labs., Inc. v. International Surplus Lines Ins. Co., 802 F.2d 667, 671 (3d Cir. 1986). Although the right to a jury trial is guaranteed by the Seventh Amendment to the United States Constitution, like all constitutional rights it can be waived by the parties. United States v. Moore, 340 U.S. 616, 621 (1951). Unlike other constitutional rights, however, an intentional relinquishment of the right is not required for waiver; the right to a jury trial can be waived by inaction or acquiescence. See, e.g., Cooper v. Loper, 923 F.2d 1045, 1049 (3d Cir. 1991) (holding that jury trial right was waived by acquiescence); see also 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, S 2321 (2d ed. 1995) (noting that the intentional relinquishment standard is inapplicable to waiver of the right to a trial by jury).

6

A.

Because the right to a jury trial in federal court is a question of federal law, our starting point is with the Federal Rules of Civil Procedure. Under Rule 38, in order to preserve the right to trial by jury as declared by the Seventh Amendment or by statute, a party must serve a demand for a jury trial upon the other parties no later than ten days after the last pleading directed to the issue to by tried by the jury. Fed. R. Civ. P. 38. If the party does not specify which issues are to be tried by a jury, the party will be deemed to have demanded trial by jury on all issues. Id. Once a demand for a jury trial properly has been made, all issues will be tried to a jury unless the parties consent to a non-jury trial or the court finds that a right to a jury trial on some or all of the issues does not exist under the Constitution or statutes of the United States. See Fed. R. Civ. P. 39(a).

It is undisputed that Ms. Africa included a general demand for a jury trial in her initial complaint in compliance with Rule 38. Ms. Africa contends that she therefore preserved her right to have the issue of willful misconduct determined by a jury simply because she never consented, by oral or written stipulation as provided in Rule 39(a), to a non-jury trial. We disagree.

Our sister courts of appeals have taken a broad approach to interpreting Rule 39(a) and accordingly have held that a party may waive his right to a jury trial under Rule 39(a) not only by stipulation, but also by failing to object to a court order. See e.g., Sewell v. Jefferson County Fiscal Court, 863 F.2d 461, 464-65 (6th Cir. 1988) (noting that courts have interpreted Rule 39(a) broadly and holding that plaintiff waived right to a jury trial by failing to object to court order setting case for bench trial). In fact, our sister court of appeals for the Ninth Circuit has specifically declined to read Rule 39(a) in the formalistic fashion advocated by Ms. Africa. See White v. McGinnis, 903 F.2d 699, 701 (9th Cir. 1990). Moreover, in Cooper v. Loper, 923 F.2d 1045, 1049 (3d Cir. 1991), we joined the majority of our sister courts in advocating waiver by acquiescence by adopting the well established rule that a party's participation in a bench trial without objection waives any

7

Seventh Amendment right to a jury trial that the party may have had. See also Wilcher v. City of Wilmington, 139 F.3d 366, 378-79 (3d Cir. 1998) (reaffirming our adoption of the Cooper rule).

Two considerable policy considerations counsel in favor of adopting the rule that parties may waive their Seventh Amendment rights by acquiescing in a judicial determination that an issue will be tried by the court. The first is the well established principle that it is inappropriate for an appellate court to consider a contention raised on appeal that was not initially presented to the district court. See Armbruster v. Unisys Corp., 32 F.3d 768, 772 n.4 (3d Cir. 1994); Frank v. Colt Indus., Inc., 910 F.2d 90, 99-100 (3d Cir. 1990). The second is the valid concern that a party should not be permitted to silently acquiesce in a trial court's plan to try an issue non-jury by failing to make a timely objection and later demand a new trial only after it has lost on the merits. See Cooper, 923 F.2d at 1049; see also United Steel Workers of America, AFL-CIO v. New Jersey Zinc Co., Inc., 828 F.2d 1001, 1008 (3d Cir. 1987) (refusing to condone practice of awaiting court's decision on the merits before raising jury trial issue). Promotion of such tactics would not only lead to an unnecessary squandering of judicial resources but would also reduce a trial court's bench proceeding to a meaningless exercise in futility. See Lovelace v. Dall, 820 F.2d 223, 228 (7th Cir. 1987) (discussing policy considerations).

In keeping with these policy considerations which have traditionally informed our Seventh Amendment jurisprudence, we hold today that where a party has made a general demand for a jury trial and the court subsequently determines that a certain issue will be determined non-jury, it is incumbent upon that party to timely lodge a specific objection in order to preserve any Seventh Amendment jury trial right he may have with respect to that issue. This rule is consistent with our general policy against ruling on an issue first raised on appeal that the district court never had the opportunity to consider. In addition, it preserves the integrity of the judicial process by ensuring that judicial determinations are given full effect and prevents the tremendous waste of

precious judicial resources that otherwise would result from duplicitous litigation.

B.

Accordingly, once the district court determined that the issue of willful misconduct would be determined without a jury, it was incumbent upon Ms. Africa to timely lodge a specific objection to that determination in order to preserve her right to a jury trial under the Seventh Amendment. We find that Ms. Africa failed to set forth a sufficiently timely and specific objection to preserve any jury trial rights that she may have had.

At oral argument before us, Ms. Africa was unable to point to any specific objection stating that her right to a jury trial under the Seventh Amendment would be abridged if the court were to determine the issue of willful misconduct. Our independent review of the record has also failed to locate such an objection. The absence of a specific objection on this point leads us to conclude that Ms. Africa has waived any right she may have had to a jury trial on the issue of willful misconduct.

Ms. Africa, however, contends that her one sentence request in the conclusion of her response of April 11, 1996 was sufficiently timely and definite to preserve her right to a jury trial. We disagree. By the time Ms. Africa submitted her response, the debate as to whether the court would determine willful misconduct was over.

The court had first announced its determination that it would resolve the willful misconduct issue on January 18, 1996. None of the initial pleadings relating to reconsideration of this determination, including Ms. Africa's January 25, 1996 response to the defendants' motions for reconsideration, objected to the court's decision that it, rather than the jury, would determine willful misconduct. In addition, when Sambor first objected to a judicial determination of the issue in his March 19, 1996 motion in limine, Ms. Africa responded by taking the position that the issue had been conclusively determined and that Sambor's motion in limine should therefore be denied. Finally, when the court reiterated its position that it would determine the

9

issue at the March 27, 1996 pretrial hearing, Ms. Africa made no objection. The court therefore had every reason to believe that, by March 27, 1996, Ms. Africa had waived any right she may have had to a jury trial on willful misconduct.

Furthermore, Ms. Africa's April 11, 1996 response was submitted in answer to the court's request that the parties give their views on the proper sequence in trying the state law claims. At that juncture, neither the court nor the parties were focusing on the issue of whether willful misconduct should be tried to a jury. The district court should not be expected to view a passing reference in the conclusion of this response as a valid demand under the Seventh Amendment absent a clear and substantiated argument relating to the grounds for such a demand.

In short, Ms. Africa's one sentence demand in a pleading unrelated to her Seventh Amendment right to a jury trial made almost four months after the court's initial determination on the issue was too little too late. Her request was not sufficiently specific to alert the court that she was exercising any rights she may have had under the Seventh Amendment to demand a jury trial on willful misconduct. In addition, her request was untimely. Accordingly, we find that Ms. Africa failed to adequately raise and preserve any right she may have had to a jury trial on willful misconduct.

III.

Ms. Africa also contends that the district court's decision on willful misconduct is fraught with legal error because the district court applied an incorrect legal standard and failed to correctly weigh the evidence presented. Neither contention has merit. The district court correctly interpreted Renk v. City of Pittsburgh, 641 A.2d 289 (Pa. 1994) as requiring a subjective standard of willfulness that calls for a showing of an intention to do what is known to be wrong. See Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 600-01 (3d Cir. 1998). In addition, the district court did not err in applying this standard and in weighing the conflicting evidence to

10

determine that Ms. Africa had failed to show willful misconduct by a preponderance of the evidence. See In re City of Phila. Litig., 938 F. Supp at 1290-93. Specifically, after independently reviewing the trial testimony, we conclude that the district court's findings that Richmond never learned of Brooks' order to put the fire out, that Sambor directed Richmond to put out the fire as soon as he received the order from Brooks, and that neither Richmond nor Sambor engaged in willful misconduct in disregarding Brooks' order or in allowing the fire to burn, are not clearly erroneous. While Ms. Africa contends that the district court did not consider certain evidence relating to the decision to initially allow the fire to burn, she has failed to point us to any evidence that would compel a finding that either Richmond or Sambor engaged in conduct they knew to be wrong. Accordingly, because we do not find any legal error, we must affirm the district court's judgment on Ms. Africa's battery claim.

IV.

In sum, we find that Ms. Africa waived any right she may have had to a jury trial on the issue of willful misconduct by failing to timely and specifically object to the district court's January 18, 1996 decision that it would determine the issue. In addition, we do not find any legal error with the district court's judgment in favor of Richmond and Sambor on Ms. Africa's battery claim. Accordingly, we must affirm the judgment of the district court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

11